CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 0 7 2009

JOHN F. CORCORAN, CLERK
BY /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

DON W. SMITH

AND

DONNA L. SMITH,

Plaintiffs,

v.

MICHAEL R. MCCARTHY, ET AL.,

Defendants.

CIVIL ACTION NO. 3:08-CV-00036

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

By counsel, Mr. Don W. Smith and Mrs. Donna L. Smith ("Plaintiffs"), husband and wife, filed the instant Complaint alleging violations of their civil rights "under the Constitution of the United States, particularly the Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States and under federal law, including without limitation, sections 1981, 1983, and 1985 of Title 42 of the United States Code." In addition to naming "UNKNOWN DEFENDANTS," Plaintiffs have named ten specific Defendants.[1] Plaintiffs seek, *inter alia*, "FIVE HUNDRED THOUSAND DOLLARS ($500,000) as compensatory damages,"

---

[1] Plaintiffs name the following Defendants: "MICHAEL R. MCCARTHY, in his individual capacity and in his capacity as a Nelson County Deputy Sheriff"; "MALCOLM E. BRIDGWATER, in his individual capacity and in his capacity as a Nelson County Deputy Sheriff"; "JOHN M. DIXON, II, in his individual capacity and in his capacity as a past Nelson County Deputy Sheriff"; "GARY L. BRANTLEY, in his individual capacity and in his past capacity as Nelson County Sheriff"; "PHILLIP D. PAYNE, IV, in his individual capacity and in his capacity as Nelson County Commonwealth's Attorney"; "JOSEPH L. RADER, in his individual capacity and in his capacity as a Virginia State Police Lieutenant"; "SHANNON Y. DION, in her individual capacity and in her capacity as a Virginia Assistant Attorney General"; "ROBERT F. MCDONNELL, in his individual capacity and in his capacity as the Attorney General of the Commonwealth of Virginia"; "TIMOTHY M. KAINE, in his individual capacity and in his capacity as Governor of the Commonwealth of Virginia"; "COMMONWEALTH OF VIRGINIA, by and through her duly established DEPARTMENT OF STATE POLICE"; and "UNKNOWN DEFENDANTS, in their individual capacities and in their capacities as employees of the Virginia State Police, the Attorney General and/or the Governor."

"THIRTY MILLION DOLLARS ($30,000,000) as punitive damages," and "an award of attorney fees and costs of suit." The matter is now before the court upon consideration of the Complaint, Defendants' Motions to Dismiss, Plaintiffs' response to the Motions to Dismiss, and the parties' arguments regarding the Motions to Dismiss, presented by counsel at a hearing on December 19, 2008. For the reasons stated herein, I will grant the Motions to Dismiss.

## I. FACTUAL BACKGROUND[2]

On February 16, 2006, Nelson County Sheriff's Department Deputies McCarthy and Bridgewater[3] went to Plaintiffs' property to determine whether David Reier, Mrs. Smith's son and Mr. Smith's stepson, was present there, the Sheriff's Department having received a warrant for Reier's arrest from Baltimore County, Maryland; additionally, Louisa County, Virginia, had

---

[2] The facts recounted herein are undisputed unless otherwise noted. The facts have been adduced from the Complaint, the attachments thereto, the Motions to Dismiss, and a transcript of Plaintiffs' August 2, 2006, criminal trial on charges of obstruction of justice in the General District Court of the County of Nelson. (As discussed further elsewhere in this opinion, Mrs. Smith was found guilty of a misdemeanor charge of obstruction of justice, the charge against Mr. Smith was dismissed, and Mrs. Smith did not file an appeal.) Plaintiffs' counsel filed the transcript on Tuesday, December 16, 2008, three days before the hearing on the instant Motions to Dismiss; Plaintiffs' counsel also filed a "notice" that, in opposition to the Defendants' Motions to Dismiss, he would "partially rely on the transcript of August 2, 2006. . . ." On Thursday, December 18, 2008, Defendants McCarthy, Bridgewater, Dixon, and Brantley filed objections to the submission of the transcript, stating that "the submittal of the transcript is not in compliance with the Federal Rules of Civil Procedure and the Court's Pre-Trial Order and, therefore, should not be considered at this stage of the proceedings." However, the Complaint cites to and quotes from the transcript as an exhibit, and Plaintiffs' counsel's cover letter accompanying the Complaint further indicates that counsel intended to submit the transcript as an exhibit to the Complaint. When dismissing a complaint for failure to state a claim upon which relief may be granted, courts may consider exhibits attached to the complaint, and where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *see also Anheuser-Busch v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated and remanded on other grounds*, 517 U.S. 1206 (1996). At any rate, the Court has read the transcript merely to clarify and supplement its understanding of Plaintiffs' factual allegations (*e.g.*, the transcript indicates that the Nelson County Sheriff's Department defendants were looking for a "green Dodge pickup truck," rather than a "green pickup truck," and Mrs. Smith testified that she knew law enforcement officers had been looking for her son), and Defendants are not prejudiced by the Court's reading of the transcript. Accordingly, Defendants' objections are overruled.

[3] Plaintiff spells this Defendant's name "Bridgwater"; however, Defendants' Motion to Dismiss (docket no. 30) spells the name "Bridgewater." The Court will adopt the latter spelling.

issued a *capias* for Reier's arrest. On the morning of February 16, 2006, following up on reports that Reier had been seen in the area driving a green Dodge pickup truck, the deputies traveled in separate vehicles to the Smiths' property. The deputies, at least one of whom had some superficial familiarity with the property at the Smiths' address, drove up the driveway to what appeared to be the main residence on the Smith's property, parked in the driveway, and knocked on the door, but obtained no response. As the deputies began to drive from the property, they observed from the driveway a green Dodge pickup truck parked behind a cabin elsewhere on the property.[4] The deputies parked their vehicles and, attempting to determine whether anyone was present, the deputies investigated the truck, several other unoccupied vehicles, and an unlocked or open "camper trailer." The deputies knocked upon the door to the cabin but received no answer, and maintained that they found the cabin locked. Evidently the green Dodge pickup truck was unlocked, and Deputy McCarthy later testified that he "found papers in the truck that indicated [that Reier] owned the truck." According to Plaintiffs, the truck had borne a Maryland license plate; according to the deputies, the green Dodge pickup truck bore no license plate on February 16, 2006. Through an approximately inch-and-a-half space beneath a door, the deputies detected movement inside the cabin; because of this, Deputy Bridgewater placed a cell phone call to Captain Dixon to initiate the process for obtaining a search warrant.

The deputies observed Mrs. Smith approaching in a van. Mrs. Smith drove to the point where one of the deputies' vehicles blocked further ingress, parked her van, and, after some discussion with Deputy McCarthy, got out of the van. Soon after Mrs. Smith arrived in the van,

---

[4] The record indicates that unspecified Nelson County officers had visited Plaintiffs' property the night before, and that the truck had been parked elsewhere on the property. On February 16, 2006, the deputies determined that the warmth of the hood and wetness on the tires and in the wheel well suggested that the truck had been recently driven.

Mr. Smith approached in a separate vehicle. Deputy McCarthy informed Mrs. Smith that they were looking for her son, who was a fugitive, and inquired if she knew where he was. Mrs. Smith stated that she did not know her son's whereabouts, and a combative discussion ensued. Mrs. Smith declined to consent to a search of the cabin. Mrs. Smith was informed that a search warrant was being obtained and that, although she could leave, she could not go into the cabin until the deputies had searched the house. When told that the cabin doors were locked, Mrs. Smith insisted that they could not be locked, because the Smiths had no keys to the doors and thus did not lock them.

Mrs. Smith also declined to consent to a search of her van; according to McCarthy, an object that appeared to be a rolled-up carpet, large enough to hide a person, was lying in the back of the van. When McCarthy attempted to have a closer look into the van through its windows,[5] Mrs. Smith attempted to physically prevent McCarthy from viewing the inside of the van. An altercation ensued between McCarthy and Mrs. Smith, and McCarthy subdued Mrs. Smith. At some point during the encounter between Mrs. Smith and Deputy McCarthy, Mr. Smith exited his vehicle. During the struggle, Mr. Smith approached and, in an attempt to intervene, either grabbed McCarthy's shirt or placed a hand on McCarthy's shoulder. Deputy Bridgewater then approached with his handgun drawn, subdued Mr. Smith (who was apparently cooperative when confronted with the drawn handgun), and McCarthy eventually secured Mr. Smith with handcuffs, after having handcuffed Mrs. Smith. Thereafter, Sheriff Brantley arrived with

---

[5] It is unclear whether McCarthy attempted to look through open or closed windows. In testimony at her trial for obstruction of justice, Mrs. Smith stated that, because her windows are darkly tinted, McCarthy would have to get close to the windows to look through them; however, she later testified that he could simply have looked through the windows because "[t]he windows were down." At any rate, it is undisputed that McCarthy attempted to look through the windows into the van, whether through open windows or by raising his hands to shade his eyes to look through the tinted windows of the van.

-4-

Captain Dixon. The Smiths then consented to a search of the cabin. Although the deputies stated that they had earlier found the cabin locked, the cabin was found to be unlocked when the Smiths consented to the search, and the Smiths reiterated that they had not locked the doors because they had no keys to open the locks. David Reier was not in the cabin; according to Deputy Bridgewater, fresh footprints in the mud behind the cabin and the unlocked doors suggested that Reier had escaped while Mrs. Smith diverted the deputies' attention.

Subsequent to this encounter, McCarthy issued a summons for the arrest of Mr. and Mrs. Smith for obstruction of justice. On August 2, 2006, in the General District Court of the County of Nelson ("Nelson GDC"), Mrs. Smith was convicted of the misdemeanor charge of obstruction of justice, but the charge against Mr. Smith was dismissed. Mrs. Smith was fined $250.00 and given a suspended sentence of thirty days in jail.[6] According to the instant complaint, Mrs.

---

[6] Plaintiffs are represented in the instant action by Bruce K. Tyler, the same attorney who represented them in the Nelson GDC. Additionally, the instant Complaint indicates that Tyler represents Plaintiffs in a case in the Circuit Court for Nelson County, arising out of the incidents of February 16, 2006, alleging "personal injuries for trespass, assault and battery and malicious prosecution. . . ."

At the trial before the Nelson GDC, Plaintiffs testified that David Reier has never owned a vehicle registered in the Commonwealth of Virginia, and that the green dodge pickup truck was registered in Maryland in someone else's name. McCarthy's testimony included the following statements: "I ran the tags and it was, as I recall, it's registered to David Reier. I don't know if it was the tags or if I ran the [Vehicle Identification Number ("VIN")], but it was his truck." However, McCarthy's testimony also revealed that his records for the events of February 16, 2006, do not indicate that he received – or did not receive – any verification of the truck's VIN. The following exchange occurred during Plaintiffs' counsel's cross-examination of Deputy McCarthy:

> [Plaintiffs' counsel]: [Y]ou found papers in the truck that indicated [Reier] owned the truck. What papers did you look at?
>
> [Commonwealth's Attorney]: Judge, I object. Relevance to all this. The issue is obstruction of justice. . . .
>
> [Plaintiffs' counsel]: An illegal arrest, Judge, is a perfect defense to it.
>
> THE COURT: What does the truck have to do with an illegal arrest?
>
> [Plaintiffs' counsel]: That they shouldn't have been on the property to begin with. They didn't have probable cause to even drive up the driveway.

(continued...)

Case 3:08-cv-00036-NKM-BWC   Document 69   Filed 01/07/09   Page 5 of 33   Pageid#: 442

THE COURT: Well, you don't need probable cause to drive up the driveway, you just need reasonable or a particular suspicion that there may have been a fugitive some place.

What we have is they see a color and type of make of a vehicle that an alleged fugitive has been seen driving. And so they go to investigate that.

That's all we have at this stage. But, you know, what he did with the truck really doesn't have anything to do [sic]. Because if these folks are not the owners of the truck and it belongs to someone else, they've got no standing to argue what an officer did with that particular truck. Because it's immaterial to what they've been charged with.

[Plaintiffs' counsel]: But it's very material to the search of the residence that these people refused to consent to. Because they're using the truck to try to get into their residence. So the truck is very relevant to whether or not they can get into the Smiths' house.

THE COURT: But if they have decided, or gotten information that this vehicle belonged or was owned by the alleged fugitive, they haven't pursued a search warrant at this particular stage. That was probably their intent is that they were going to get a search warrant. In the interim the owners of the [home come up]. There's confrontation, but then there's permission to go ahead and search the [home].

So, I mean, why are we dancing around what happened with this green truck when the issue is basically something that occurred in front of the house, not behind [the house] with the truck? It occurred when the owners of the [home came upon] their property and saw police officers there. That's basically where everything gets started. Because the officer says here's why we're here, this is what we think. And, you know, at least one owner, Mrs. Smith, from the testimony we've heard at this particular point, objected to the officer's presence and, you know, then it kind of just fell apart until everyone got control of their senses. And, you know, then they allowed a search of their house.

But, you know, they went up to one property where they had information. You know, I think officers are entitled, if they get information that someone had been seen at a particular place, they have a right to go in and make an investigation. The only intrusion is that they drove up a driveway. But if they got cause that they think there may be a fugitive out there, they have a right to do that. They don't have a right to go into a house, but they have a right to knock on a door to inquiry [sic]. And when he says no one was there and as they're going down the hill they see a truck that's, I'm assuming is green in color and is a pickup truck. And that's the information they were given where this alleged fugitive had been seen driving a green pickup truck. Not saying it's the same one, but they got information and it's parked down at the house below where it had been seen earlier.

You know, I don't have a problem with the officers going in to investigate that. I think that's what police are supposed to do.

Plaintiffs' counsel apparently felt – and still feels – that the allegedly insufficient or disputable information about the identification of the truck means that there was not probable cause for the deputies to

Smith "declined" to lodge a timely appeal of her conviction.

By letters dated February 27, 2007, and March 22, 2007, long after the time to note an appeal of Mrs. Smith's conviction, Plaintiffs' counsel requested that Defendant Phillip D. Payne, IV (the Nelson County Commonwealth's Attorney), and Defendant Lieutenant Joseph L. Rader (of the Virginia State Police) conduct an investigation into whether the deputies had offered perjured testimony. Rader and Payne reviewed the allegations and, by letter dated July 23, 2007, Payne informed counsel that his review and investigation led him to conclude that the deputies had not committed perjury and that there had been no conspiracy to convict Plaintiffs of obstruction of justice.

By letter dated December 12, 2007, counsel requested that Defendants Governor Kaine and Attorney General McDonnell investigate whether the deputies testified truthfully. Counsel also requested that the matter be referred to a "special prosecutor." By letter dated January 14,

---

[6](...continued)
question Mrs. Smith about her son's whereabouts. Although the conduct and outcome of Mrs. Smith's trial in the Nelson GDC is not properly before this Court, it is clear that the circumstances warranted questioning Mrs. Smith. The record reveals the following undisputed facts: Reier was wanted on outstanding warrants; Reier is Mrs. Smith's son; officers had received information that Reier had been seen in the area driving a green Dodge pickup truck; there was a green Dodge pickup truck on the Smiths' property, parked behind the cabin; and the green Dodge pickup truck had been moved from where it had been parked the previous evening. As for Mrs. Smith's conviction, which she did not appeal, the record suggests that, knowing that her son was a fugitive from justice, she did, in fact, engage in conduct sufficient to warrant the misdemeanor conviction. Her own testimony establishes that she expressed annoyance, at the very least, at the deputies' presence on her property, and that she physically attempted to prevent Deputy McCarthy from looking into her van windows, which are darkly tinted, but which may have been open. Additionally, the instant Complaint states that, when McCarthy inquired "whether [Mrs. Smith] would consent to a search of the cabin in which she and her husband lived," Mrs. Smith "told [McCarthy] to wait until her husband arrived." Then,

> McCarthy declared that he was going to search the van to which plaintiff replied "No, you're not." McCarthy began moving toward the sliding door on the side on Plaintiff Donna Smith's van. **She maneuvered her body so as to place the same between McCarthy and the van's door with her back to McCarthy and her arms spread-eagled across the side of the van in a protective position.**

(Emphasis added.)

-7-

2008, Defendant Assistant Attorney General Dion informed counsel that "the Office [of the Attorney General] is without authority to act" upon his request.

Plaintiffs filed the instant lawsuit on August 1, 2008. The Court will introduce additional facts as necessary in its discussion.

## II. STANDARDS OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff "has the burden of proving that subject matter jurisdiction exists." *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(1), a court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (internal citation omitted). The moving party's motion to dismiss should be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal citation omitted).

### B. Fed. R. Civ. P. 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.*, at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S.

-8-

Ct. 1955, 1965 (2007). "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. A complaint may not be dismissed if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at ___, 127 S. Ct. at 1974. Nonetheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at ___, 127 S. Ct. at 1964-65. When dismissing a complaint for failure to state a claim upon which relief may be granted, courts may consider exhibits attached to the complaint, and where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *see also Anheuser-Busch v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated and remanded on other grounds*, 517 U.S. 1206 (1996).

### III. Discussion

#### A. Plaintiffs' Allegations

Plaintiffs contend that, on February 16, 2006, Deputies McCarthy and Bridgwater conducted an illegal search of Plaintiffs' premises while Plaintiffs were away from the property, that Deputy McCarthy blocked Mrs. Smith's van from entering her driveway, and that Deputy McCarthy asked Mrs. Smith "questions in an arrogant, highly suspicious, intemperate and high-

-9-

handed fashion. . . ." Plaintiffs allege that Deputy McCarthy stated his intention to search the van, to which Mrs. Smith responded, "No, you're not," and then physically blocked McCarthy's access to the side of the van, whereupon Deputy McCarthy "smash[ed]" Mrs. Smith's head into the side of the van, "'dropped' her into a ditch," and "brutally handcuffed her." According to Plaintiffs, when Mr. Smith arrived and attempted to protect his wife by grabbing Deputy McCarthy's shirt, Deputy McCarthy "maced" him.[7] Plaintiffs state that, after they were arrested, "defendants Dixon and Brantley arrived at the scene and all four [of the Nelson County Sheriff's Department] defendants conferred at times as an entire group and at times in smaller groups out of the earshot of the plaintiffs and appeared at times to be talking on cell phones."

Plaintiffs contend that on May 10, 2006, Defendant Payne, who was acting in his capacity as the Commonwealth's Attorney conducting the prosecution against the Smiths, gave their counsel "unsolicited" documents consisting of a "confidential supplement" and dispatch logs. Plaintiffs allege that, approximately one week before the trial on August 2, 2006, their counsel mailed letters, dated July 25, 2006, to Captain Dixon and Commonwealth's Attorney Payne requesting the names of the deputies who had visited Plaintiffs' property on the evening of February 15, 2006.[8] Plaintiffs complain that their attorney did not receive the names of the deputies prior to the trial, and they allege that the names constitute exculpatory evidence.[9]

---

[7] Mr. Smith's testimony in the Nelson GDC does not indicate that he was maced. Mrs. Smith's testimony suggested that their dog was maced.

[8] The letter, which was attached to the Complaint as Exhibit D, asks for the names of the deputies who had been at the residence the night before the arrest. Plaintiffs claim that those deputies may have had knowledge that the truck located on the premises was registered to a Maryland man and not to Mrs. Smith's son, an issue which Plaintiffs claim is relevant to a determination of probable cause for the deputies to be on their premises on February 16, 2006.

[9] There are no allegations that the Plaintiffs ever brought this issue to the attention of the trial judge, and the
(continued...)

Case 3:08-cv-00036-NKM-BWC    Document 69    Filed 01/07/09    Page 10 of 33    Pageid#: 447

Plaintiffs add that, in their view, McCarthy and Bridgewater did not have "legal justification for entering plaintiffs' property." Plaintiffs aver that, at the trial in the Nelson GDC, Deputies McCarthy and Bridgewater provided false testimony regarding the registration of the green Dodge pickup truck.

In the "First Count" of their Complaint, Plaintiffs state the following:

29.  Soon after the attack on Donna Smith and the arrest of plaintiffs and continuing until [the trial in the Nelson GDC on] August 2, 2006, defendants McCarthy, Bridgewater, Dixon, Brantley and Payne, individually and in concert with each other, willfully, knowingly, and with specific intent to deprive plaintiffs of their rights hereinafter described, agreed, combined and conspired to seek the conviction of plaintiffs for obstruction of justice which was the objective of the conspiracy.  Defendants sought such convictions not only to justify McCarthy's unprovoked attack but to interpose them as affirmative defenses to any personal injury claims arising from the illegal entry onto the Smiths' property, the attack of defendant McCarthy upon Donna Smith, her arrest, and the assault upon, and the arrest of Don Smith by defendant Bridgwater [sic] which plaintiffs might file as a result of that day's events.  And in fact, defendant McCarthy has pleaded the conviction of Donna Smith as an affirmative defense in a pending Nelson County Circuit Court complaint for personal injuries for trespass, assault and batter and malicious prosecution. . . .

30.  In furtherance of the conspiracy which attained its objective as to Donna Smith by her conviction of August 2, 2006, said defendants, individually and in concert with each other, did maliciously and without legal cause, justification or excuse, with intent to injure, oppress, threaten, and intimidate plaintiffs in the exercise of their constitutional and federal statutory rights described below (1) issue aforesaid summonses to the Smiths accusing them of fabricated charges of obstruction of justice, a Class I misdemeanor; (2) provided the Smiths before trial, in an attempt to induce them to plead guilty to the fabricated charges, with unsolicited evidence showing gratuitous self-serving additions to the dispatch notes, Exhibit "C", [sic] the additions being made well after defendants McCarthy and Bridgwater [sic] had departed the Smith property; (3) provided the Smiths before trial, in an attempt to induce them to plead guilty to the fabricated charges, with the fabrication of an "official" version of the events suggesting that Donna Smith was a felon guilty of harboring a fugitive and that she created the disturbance with McCarthy so as to divert attention from

---

[9](...continued)
record does not reflect that the matter was ever raised in the Nelson GDC.

Case 3:08-cv-00036-NKM-BWC   Document 69   Filed 01/07/09   Page 11 of 33   Pageid#: 448

David Reier's imaginary escape, all as highly suggested in the Confidential Supplement, Exhibit "B" and strongly implied in the Nelson County General District Court's finding of Donna Smith's guilt; (4) fixed and coordinated their testimony before trial so that it would tend to support the fabricated "official" version' (4) [sic] failed to provide plaintiffs with evidence before trial, as they were required to do, of the "clearing" of the Smiths' property for the presence of David Reier on the night before by the two (2) deputies; presented untruthful testimony to the court on issues of probable cause and identification of the truck as more fully detailed above and (6) presented untruthful testimony at trial on all other material issues of the case.

31. Each of defendants McCarthy, Bridgwater, Dixon, Brantley and Payne, individually and in concert with each other, acted without authorization of law, under pretense and color of law and in his official capacity, with the specific intent to deprive plaintiffs of their rights (1) to freedom from illegal searches and seizure and seizure of their persons and property; (2) to freedom from unlawful arrest, detention and imprisonment; (3) not to be deprived of life, liberty, or property without due process of law; (4) not to be falsely "criminalized" by state officers in order to protect a criminal state officer(s); (5) to defend themselves as criminally accused persons; (6) as victims of crime to the protection of police officers, the courts and the law and to have the wrongdoers duly prosecuted and punished and (7) not to be deprived of any and all further rights guaranteed them by the Constitution of the United States, Sections 1981, 1983 and 1985 of Title 42 of the United States Code and any and all other federal statutes for such cases made and provided.

The "Second Count" of the Complaint states:

33. After the trial was concluded, plaintiffs ordered the transcript of the trial and conferred with Tyler[10] about an appeal of Donna Smith's conviction. Certain that fraud had been visited upon the General District Court, they decided that the conviction would be vacated easily once the transcript and other material were referred to Payne, whose participation was not suspected at the time, and other law enforcement authorities, as Tyler was required to do as an officer of the Court. Confident that justice would be done, they declined to appeal. Accordingly, with a letter dated February 27, 2007, a partially redacted copy of which is attached hereto as Exhibit "E", [sic] Tyler delivered by certified mail, return receipt requested, the transcript and other related material to defendant Payne and and [sic] to the Appomattox Unit of the Virginia State Police, reporting his "considered opinion" of the case.

---

[10] The Court notes again that Tyler represented Plaintiffs in the Nelson GDC and also represents them in the instant action.

Case 3:08-cv-00036-NKM-BWC   Document 69   Filed 01/07/09   Page 12 of 33   Pageid#: 449

34. After a meeting in his Afton office with defendant Rader, Tyler wrote a letter to defendant Rader dated March 22, 2007, with a copy to defendant Payne, and mailed the same, certified mail, return receipt requested, to both of them. A true copy of said letter dated March 22, 2007, is attached hereto as Exhibit "F". [sic] Defendant Payne acknowledged the receipt of the material by faxed letter dated March 29, 2007, a copy of which is attached as Exhibit "G", [sic] making no comment with respect to the matters set forth in Tyler's letter dated March 22, 2007.

35. By letter dated July 23, 2007, a true copy of which is attached hereto as Exhibit "H", [sic] defendants Payne and Rader communicated to Tyler their determination that there was no perjury nor conspiracy.

36. By letter dated September 17, 2007, a true copy of which is attached hereto as Exhibit "I", Tyler expressed his disappointment with the conclusion of Payne and Rader and informed Payne that the matter would "be referred to the next level."

37. On December 12, 2007, Tyler referred the matter to defendants Kaine and McDonnell, who received them on December 14, 2007. A true copy of Tyler's letter dated December 13, 2007, along with a "compendium" of the enclosures mailed to said defendants by certified mail, return receipt requested, are attached hereto as Exhibit "J". [sic]

38. Under Section 2.2-511 of the Code of Virginia (1950), as amended, defendant McDonnell had no authority to institute and conduct criminal prosecutions in the Nelson County Circuit Court without the "concurrence of the local attorney for the Commonwealth" unless "specifically requested by the Governor to do so." It was the joint and several duty of defendants Kaine and McDonnell, upon the receipt of the material from Tyler, to fully and impartially investigate the matters referred to them and take such action as the law and justice demanded, and under a reasonable view of the evidence presented to them, certainly not deferring to the findings of "the local attorney for the Commonwealth" and defendant Rader. Moreover, even if McDonnell were personally limited by §2.2-511 to intervene in this matter, it was incumbent upon him to urge Kaine to make the specific request contemplated by the statute, and it was incumbent upon Kaine to make that specific request even in the absence of McDonnell's recommendation that he do so.

39. Nevertheless, in spite of said duties, defendant Shannon Y. Dion, writing on behalf of defendant McDonnell and defendant Department of State Police, and presumably on behalf of defendant Kaine, by letter dated January 14, 2008, a true copy of which is attached hereto as Exhibit "K", informed Tyler that the Office of the Attorney General was "without authority" to act.

-13-

40.  Defendants Rader, Dion, attorney for the Department of State Police, McDonnell and Kaine acquiesced in, condoned and ratified the actions of defendants McCarthy, Bridgwater [sic], Dixon, Brantley and Payne set forth in the First Count and that acquiescence, condonation and ratification continues to date, all justifying joining the Department of State Police and the Commonwealth of Virginia as defendants in this civil action and as such defendants, making them liable to plaintiffs Smith. . . .

Defendants have raised a number of defenses.  Because three separate groups of Defendants have filed three separate Motions to Dismiss, raising a number of potential defenses, the Court will discuss the applicable defenses in its analysis.

### B.  Analysis

### 1.  Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1981

Section 1981 of Title 42 of the United States Code "has a specific function:  It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)).  It is clear, then, that 42 U.S.C. § 1981 is inapposite here.[11] Accordingly, any claim against any of the Defendants purported to have been brought under § 1981 is dismissed for failure to state a claim upon which relief may be granted.

### 2.  Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1985

As for Plaintiffs' claims of conspiracy to violate their constitutional rights under 42 U.S.C. § 1985, the complaint fails to establish any facts or allegations of a conspiracy under that section.  Plaintiffs do not specify upon which paragraph or clause of § 1985 they base their conspiracy claim; however, it is clear that the only possibly applicable portions are the first

_____

[11] In their Memorandum in Opposition to Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Plaintiffs concede that their claims under 42 U.S.C. § 1981 are improper, stating: "Plaintiffs do concede that the reference to § 1981 should have been edited out before the complaint was filed. . . ."

-14-

portion of § 1985(3) and the second clause of § 1985(2).[12]

To establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under § 1985(3), a plaintiff must allege:

> (1) a conspiracy of two or more persons, (2) who are **motivated by a specific class-based, invidiously discriminatory animus** to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. . . . Moreover, the law is well settled that to prove a section 1985 "conspiracy," a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights.

*Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (citations omitted) (emphasis added); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "To meet the requirement of a class-based discriminatory animus, under this section the class must possess the 'discrete, insular

---

[12] In their Motions to Dismiss, Defendants address only § 1985(3), and the Motion to Dismiss (docket nos. 28 & 29) filed by the "State Defendants" asserts that § 1985(3) is "the subsection seemingly most pertinent to Plaintiffs' allegations." However, it is my opinion that the Complaint could be construed to assert a claim under the first portion of § 1985(3) and the second clause of § 1985(2).

The first portion of § 1985(3), which actually contains two separate clauses, reads as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws. . . .

The second portion of 42 U.S.C. § 1985(2) applies to conspiracies to obstruct the course of justice in state courts, providing that,

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws. . . .

The other portions of § 1985 "relate to institutions and processes of the federal government – federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3)." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). It is clear that those portions of § 1985 cannot be implicated in the instant action.

-15-

and immutable characteristics comparable to those characterizing classes such as race, national origin and sex.'" *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (citation omitted). Moreover, to state "'conspiracy claims under § 1985(3) or § 1983,'" a plaintiff must "'plead specific facts in a nonconclusory fashion to survive a motion to dismiss.'" *Simmons*, 47 F.3d at 1377 (quoting *Gooden v. Howard County*, 954 F.2d 960, 969-970 (4th Cir. 1992)).

To state a claim under the second clause of § 1985(2), "'[t]he language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Kush v. Rutledge*, 460 U.S. 719, 725-26 (1986) (quoting *Griffin*, 403 U.S. at 102) (holding that the absence of such language in the first clause of § 1985(2) means that "Congress did not intend to impose a requirement of class-based animus on persons seeking to prove a violation of their rights under the first clause of § 1985(2)"); *see also Bloch v. Mountain Mission School*, 846 F.2d 69 (4th Cir. 1988) (Table) (post-*Kush*, observing that a racial or class-based animus is necessary for a violation of the first part of § 1985(3) and the second part of § 1985(2)); *Dotson and Bloch v. The Mountain Mission School, et al.*, 692 F. 2d 752 (4th Cir. 1982) (Table) (pre-*Kush*, reasoning that racial or class-based animus is necessary for a violation of the second clause of § 1985(2) because "[t]he 'equality' language that is the foundation for the class-based animus requirement in § 1985(3) is conspicuously absent from the first half of § 1985(2) but is present in the second half of § 1985(2)").

In this case, Plaintiffs have not alleged that any Defendants harbored any racial or class-based discriminatory animus against them.[13] Nowhere does the instant Complaint provide

---

[13] In their response opposing the Motions to Dismiss, Plaintiffs state, "Some defendants claim that Section 1985
(continued...)

-16-

any facts lending any support whatsoever to a conspiracy claim under § 1985. In fact, the § 1985 conspiracy allegation is entirely conclusory, and the complaint is completely devoid of any suggestion that "two or more" of the Defendants, "motivated by a specific class-based, invidiously discriminatory animus," conspired to violate Plaintiffs' civil rights. Accordingly, any claim alleged against any of the Defendants under § 1985 is dismissed for failure to state a claim upon which relief may be granted.

### 3. § 1983 Claims Outside the Statute of Limitations

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

There is no federal statute of limitations applicable in § 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). Accordingly, § 1983 actions are governed by the state statute of limitations for general personal injury cases in the state where the alleged violations occur. *Owens v. Okure*, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. § 8.01-243(a). Therefore, a plaintiff bringing a civil rights action under § 1983 in Virginia must do so within two years from the time when his action accrues. *Id.* However, the time of accrual of a cause of action under § 1983 is a federal question.[14] *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (*en*

---

[13](...continued)
envisages only racially motivated conspiracies but surely the Smiths as white people are also entitled to the equal protection of the law."

[14] In their Motion to Dismiss (docket nos. 30 & 31), the Nelson County Sheriff's Department Defendants incorrectly state that, when determining the accrual of § 1983 claims, a federal court applies state law.

*banc*). Additionally, the Supreme Court of the United States has recognized that, although it had "never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, ___ U.S. ___, 127 S. Ct. 1091, 1095 (2007). In *Nasim*, the United States Court of Appeals for the Fourth Circuit held that a cause of action under § 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* (citation omitted).

In this case, the complaint was filed on August 1, 2008, and any claims regarding the events of February 16, 2006 – excessive force, violations of Plaintiffs' due process rights, illegal entry upon Plaintiffs' property, illegal search and seizure, etc. – are untimely and therefore fail to state a claim upon which relief may be granted. *See, e.g., Lewis v. Richmond City Police Dep't.*, 947 F.2d 733, 735 (4th Cir. 1991). Accordingly, such claims are dismissed.

### 4. Remaining Claims Under 42 U.S.C. § 1983

#### a. The "State Defendants"

The "State Defendants" are as follows: Commonwealth of Virginia; the Department of State Police; the Honorable Timothy M. Kaine, Governor; the Honorable Robert F. McDonnell, Attorney General; Shannon Y. Dion, Assistant Attorney General; and Virginia State Police Lieutenant Joseph L. Rader. The State Defendants have filed one Motion to Dismiss (docket nos. 28 & 29). For the following reasons, the remaining § 1983 claims against the State Defendants will be dismissed.

#### *Eleventh Amendment*

Plaintiffs' claims against the State Defendants must be dismissed for lack of subject matter jurisdiction because the claims are barred by the Eleventh Amendment. The Eleventh

Amendment bars citizens from bringing a suit in federal court against their own state. *See Hans v. Louisiana*, 134 U.S. 1 (1890). "[T]he essence of the [Eleventh Amendment] immunity is that the State cannot be sued in federal court at all, even where the claim has merit, and the importance of immunity as an attribute of the States' sovereignty is such that a court should address that issue promptly once the State asserts its immunity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 n.4 (4th Cir. 2005).

The Eleventh Amendment also bars claims against state agencies. *See id.* at 479. Plaintiffs' suit against the Commonwealth and the Department of State Police is barred by the Eleventh Amendment and therefore shall be dismissed. Furthermore, Eleventh Amendment immunity extends to state officials who are sued for damages in their official capacity, since such actions merely constitute suits against the state. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). This Court is without jurisdiction to hear and decide Plaintiffs' claims for money damages against individual State Defendants in their official capacity. As such, Plaintiffs' claims against Governor Kaine, Attorney General McDonnell, Assistant Attorney General Dion and Lieutenant Rader in their official capacity must be dismissed.

### *Qualified Immunity*

Furthermore, the individual State Defendants are immune from Plaintiffs' suit for money damages on the basis of qualified immunity because these Defendants did not violate any clearly established constitutional rights of which reasonable state officers would have been aware. Qualified immunity shields public officers "from liability for civil damages if their actions did

not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hope* at 752 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is "an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotations and citations omitted).

In order to determine the issue of qualified immunity, a court must first ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier* at 201. If a violation occurred, "the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 200. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, Plaintiffs base their claims against the individual State Defendants on the argument that Plaintiffs have a constitutional right to have their allegations of perjury investigated and subsequently prosecuted. However, Plaintiffs have no right to a criminal investigation or to the criminal prosecution of another. *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988); *West v. Wall*, No. 2:06cv640, 2007 U.S. Dist. LEXIS 19156, at *5-6 (E.D. Va. Mar. 16, 2007). Plaintiffs' failure to allege the violation of a constitutional right entitles the individual State

-20-

Defendants to qualified immunity.[15]

### *Failure to State a Claim*

Plaintiffs fail to state a claim under § 1983 against the Commonwealth, the Department of State Police and the individual State Defendants in their official capacity, as none are "persons" amenable to suit under 42 U.S.C. § 1983. A claim brought pursuant to § 1983 requires the deprivation of a civil right by a "person" acting under color of state law. *See Will v. Michigan Dep't. of State Police*, 491 U.S. at 70-71. A state cannot be sued under Section 1983. *Id.* Similarly, the Department of State Police, as a state agency, is not a "person" within the meaning of § 1983. *See id.* In addition, none of the individual State Defendants, acting in his or her official capacity, is a "person" for the purposes of the statute. *See id.* ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

To the extent Plaintiffs attempt to assert a claim against the individual State Defendants in their individual capacity, Plaintiffs' § 1983 claim must also be dismissed. A plaintiff must affirmatively allege a defendant's personal involvement in order to state a claim under 42 U.S.C. § 1983, and here, Plaintiffs have alleged no direct personal action taken against them by any individual State Defendant in violation of their constitutional rights. *See Garraghty v. Va. Dep. of Corrections*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 949 (4th Cir. 1985); and *Barrow v. Bounds*, 498 F.2d 1397 (4th Cir. 1974) (Table).

As previously discussed herein, Plaintiffs have no right to the investigation of their

---

[15] Plaintiffs have no standing to request the prosecution of Defendants McCarthy and Bridgwater. *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). As such, any claim based on this argument must be dismissed. Even assuming the Office of the Attorney General has any authority to initiate prosecution, Attorney General McDonnell and Assistant Attorney General Dion cannot be sued based upon absolute prosecutorial immunity. A prosecutor is immune from liability for his or her decision not to prosecute. *See Imbler v. Pachtman*, 424 U.S. 409 (1976).

-21-

claims of perjury nor do they have a right to the criminal prosecution of another. *Sattler*, 857 F.2d at 227; *West*, 2007 U.S. Dist. LEXIS 19156, at *5-6. In *Sattler*, the plaintiff alleged a violation of § 1983 on the basis that he had a constitutional right to have certain individuals prosecuted for arson. 857 F.2d at 226-227. The Fourth Circuit rejected this premise, observing that no such right exists. *Id.* at 227. Nor will the benefit of having someone else arrested for a crime generally trigger a due process claim. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). In *West v. Wall*, the court granted the defendant's motion to dismiss because the plaintiff could not base his § 1983 claim on the alleged failure of the Norfolk Police Department to properly investigate his son's death and to ensure prosecution. 2007 U.S. Dist. LEXIS 19156, at *5-6.

Here, Plaintiffs cannot hold Governor Kaine, Attorney General McDonnell, Assistant Attorney General Dion or Lieutenant Rader liable under § 1983 for the alleged failure to investigate and ensure the prosecution of Defendants McCarthy and Bridgwater when no such right exists. And, to the extent to state Plaintiffs assert conspiracy claims under § 1983 against the State Defendants, a plaintiff must "'plead specific facts in a nonconclusory fashion to survive a motion to dismiss,'" *Simmons*, 47 F.3d at 1377 (quoting *Gooden*, 954 F.2d at 969-970), and here Plaintiffs have alleged no direct personal action taken by any individual State Defendant that amounts to a deprivation of a constitutional right. The Complaint does not contain sufficient allegations to state a claim against the individual State Defendants in their individual capacity and is therefore dismissed.[16]

---

[16] To the extent the Complaint could be construed as claiming that Governor Kaine and Attorney General McDonnell violated Plaintiffs' constitutional rights by failing in their "joint and several duty . . . to fully and impartially investigate the matters referred to them," Plaintiffs are advised that state law does not provide an independently actionable claim under § 1983. *See, e.g., Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1469
(continued...)

-22-

### b. The "Nelson Defendants"

The Nelson County Sheriff's Department Defendants (the "Nelson Defendants") are as follows: Michael R. McCarthy; Malcolm E. Bridgewater; John M. Dixon, II; and Gary L. Brantley. The Nelson Defendants have filed one Motion to Dismiss (docket nos. 30 & 31). For the following reasons, the remaining § 1983 claims against the Nelson Defendants will be dismissed.

In the first instance, the complaint seeks to bring claims against the Nelson Defendants in their official capacities as deputies (and then-Sheriff) of the Nelson County Sheriff's Department. The Nelson Defendants are officers of the Nelson County Sheriff's Department, which is a political subdivision of the Commonwealth of Virginia. As such, a suit against them in their official capacities is a suit against the Commonwealth itself; thus, the court lacks subject matter jurisdiction over Plaintiffs' money damages claim. *See, e.g., Harris v. Hyter*, 970 F. Supp. 500 (W.D. Va. 1997).

Regarding Plaintiffs' claim that Bridgewater or McCarthy presented perjured testimony at Plaintiffs' trial before the Nelson GDC, the Supreme Court of the United States has specifically held that police officers are immune from an action arising under § 1983 arising out of allegedly perjured testimony. In *Briscoe v. LaHue*, 460 U.S. 325, 342-43 (1983), the Court held that, although police officers may be held criminally liable for perjury, they, like all other

---

[16](...continued)
(4th Cir. 1990) (finding that state official's failure to abide by state law as to procedural protections is not a federal due process issue). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the *Constitution and laws of the United States*, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted, emphasis added). To the extent the instant Complaint could be liberally construed to implicate some claim available to Plaintiffs under state law, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c)(3), which provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ."

Case 3:08-cv-00036-NKM-BWC   Document 69   Filed 01/07/09   Page 23 of 33   Pageid#: 460

witnesses, are absolutely immune from a claim for damages for giving perjured testimony at a criminal trial.[17]

Plaintiffs claim that the deputies failed to provide Plaintiffs with purportedly "exculpatory" evidence before trial.[18] There is no constitutional violation where a police officer fails to disclose evidence directly to defense counsel. *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) ("*Jean II*") (Wilkinson, J., concurring) (*en banc*)[19]; *see also Washington v. Buraker*, 322 F. Supp. 2d 692, 699-701 (W.D. Va. 2004). That is a duty that rests with the prosecution. *Id.* at 660-62. Such a claim requires "at a minimum that an actual bad faith deprivation of due process rights be alleged." *Id.* at 662. As with the plaintiff in *Jean II*, who contended "that the officers acted in a 'willful, wanton and reckless manner,' conclusory allegations will not suffice." *Id.* ("Jean simply is unable to provide evidence of a bad faith deprivation carried out by [defendants] – a matter on which the burden plainly rests with the plaintiff.[] For example, Jean does not claim that [defendants] destroyed or otherwise failed to preserve the evidence that is

---

[17] The Court's rationale in *Briscoe* suggests that its ruling bars not only civil claims for perjury, but also civil claims related to perjury, such as Plaintiffs' allegations that Defendants "fixed and coordinated their testimony before trial." To bar a Plaintiff from bringing a claim for perjury, but to allow a civil action for *preparing* for perjury, would circumvent this immunity and would result in exactly the sort of substantial burden on law enforcement officers that concerned the Court in *Briscoe*. 460 U.S. at 330-44. Here, however, the Court discerns that Plaintiffs' allegations that Defendants "fixed and coordinated their testimony before trial" fall within Plaintiffs' § 1983 conspiracy claims, and will address those claims herein as such.

[18] To recapitulate, the complaint alleges that Plaintiffs' counsel asked Payne (the Commonwealth's Attorney) and Deputy Dixon to provide him with any exculpatory evidence, which they allegedly failed to do. Payne provided counsel with documents discussed earlier in this opinion; these documents are also submitted as Exhibits B and C to the complaint. Exhibit D to the complaint, a letter to Dixon from counsel dated July 25, 2006, asks Dixon to provide counsel with evidence that would indicate Reier was in the house and had escaped during the commotion; that evidence is provided in Exhibit B, which indicates that, through a large gap under a door, McCarthy and Bridgewater saw a shadow move in the house, suggesting a person's presence therein. Plaintiffs also had the opportunity to subpoena and call Dixon at the trial and question him. Significantly, Exhibit D also requests the names of the deputies who had been at the residence the night before Mrs. Smith's arrest, and this is the information that, in Plaintiffs' view, constitutes "exculpatory" evidence.

[19] The district court was affirmed by Judge Wilkinson's opinion, which was designated a concurring opinion, joined by Judges Widener, Wilkins, Niemeyer, Williams, and Traxler.

-24-

now at issue – a fact which alone tends to negate any inference of bad faith"). Moreover, the evidence Plaintiffs claim to have been "exculpatory" does not meet the definition of "exculpatory" evidence. "Exculpatory" evidence is defined as evidence that is material to the issue of guilt or innocence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). The issue of probable cause and the issue of guilt or innocence are not the same. The failure to disclose information that is relevant only to the issue of probable cause to bring the charges is insufficient to establish a constitutional violation. *See Wilkins v. Clary*, 2005 WL 1705211 (E.D. Va. 2005), *aff'd*, 216 Fed. Appx. 322 (4th Cir. 2007) (holding that a criminal defendant had not been denied a right to a fair trial by law enforcement's failure to produce evidence to the grand jury that would have disclosed a lack of probable cause for the charges).

Regarding any claim of conspiracy to violate Plaintiffs' constitutional rights under § 1983, the Complaint fails. Plaintiffs claim that Defendants "fixed and coordinated their testimony before trial," but the testimony that Plaintiffs claim was "fixed and coordinated" concerns not the Smiths' guilt or innocence of the state misdemeanor charge of obstruction of justice; rather, Plaintiffs claim that the Deputies did not have cause to be on their property on February 16, 2006. However, it is clear from the Complaint itself that no constitutional right was violated by Bridgewater and McCarthy's entry upon Plaintiffs' property. If there has been no violation of a constitutional right, a § 1983 action is barred. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (Thomas, J., plurality opinion) (holding that, because an officer's actions did not violate the plaintiff's constitutional rights, the actions "cannot be grounds for a § 1983 action"). Additionally, in determining whether a state actor is immune from suit under qualified immunity, a court must first determine whether "the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. The qualified immunity "sequential" inquiry proceeds only

Case 3:08-cv-00036-NKM-BWC   Document 69   Filed 01/07/09   Page 25 of 33   Pageid#: 462

if a violation occurred. *Id.* at 200.

Plaintiffs allege that Defendants, "without any cause or legal justification whatsoever, entered onto plaintiffs' property," thereby depriving plaintiffs of their right "to freedom from illegal searches and seizure of their persons and property." However, no constitutional right was violated when the deputies "entered onto plaintiffs' property." In evaluating a search under the Fourth Amendment, the alleged bad faith or subjective intent of an officer is irrelevant, and the search is evaluated from an objective perspective. *Brigham City v. Stuart*, 547 U.S. 398, 404-05 (2006). In *Brigham City*, the Supreme Court held that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify [the] action. . . . The officer's subjective motivation is irrelevant." *Id.* at 404 (internal citations and quotations omitted).

It is objectively reasonable for a police officer to approach a private residence by the driveway or sidewalk to speak with the owners.

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right of privacy, for any one openly and peaceably . . . to walk up the steps and knock on the front door of any man's "castle" . . . whether the questioner be a pollster, a salesman, or an officer of the law.

*United States v. Taylor*, 90 F.3d 903, 909 (4th Cir. 1996) (internal quotations and citations omitted); *see also United States v. Bradshaw*, 490 F.2d 1097, 1100 (4th Cir. 1974) (stating that law enforcement officers "were clearly entitled to go onto defendant's premises in order to question him"). In the instant case, it is clear that McCarthy and Bridgewater were justified in proceeding by car down the Plaintiffs' driveway and parking their car on the driveway in order to inquire about the green Dodge pickup truck and the possibility that Reier was present on the

-26-

premises.[20]

Furthermore, an essential element for a claim of a conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir.1987). Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagon v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir.1981). Plaintiffs must allege facts showing that Defendants shared a "unity of purpose or a common design" to injure them. *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946). When a plaintiff makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, I may properly dismiss the complaint. *See Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1126-27 (9th Cir.1989); *Cole v. Gray*, 638 F.2d 804, 811-12 (5th Cir.1981).

Plaintiffs fail to allege any facts indicating that the Nelson Defendants acted jointly to injure them. Plaintiffs rely on conclusory allegations that, after having arrested them, the Nelson Defendants somehow colluded because they stood aside and "conferred" "out of the earshot of the plaintiffs," and "appeared at times to be talking on cell phones." *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994) (holding complaint dismissed because it did not have any factual supporting bare assertions); *White v. White*, 886 F.2d 721, 724 (4th Cir.1989) (same). The instant complaint relies on conjecture and is devoid of any sufficient allegation of the Nelson Defendants' meeting of the minds. Moreover, Plaintiffs do not show that any actual deprivation

---

[20] The Court reiterates the following undisputed facts: a *capias* had been issued for Reier; Reier is Mrs. Smith's son; officers had received information that Reier had been seen in the area driving a green truck; there was a green Dodge pickup truck on the Smiths' property; and the truck had been moved from where it was parked the previous evening.

of their constitutional rights resulted from the alleged conspiracy, because there can be no conspiracy to do what the law allows, and the Nelson Defendants were not outside the law when they entered Plaintiffs' property seeking to learn the whereabouts of Mrs. Smith's son.[21]

### c. *Phillip D. Payne, IV*

As for any remaining claims under § 1983 against Commonwealth's Attorney Phillip D. Payne, IV, his Motion to Dismiss (docket nos. 32 & 33) will be granted for the following reasons.

### *Absolute Immunity – Prosecutorial Immunity*

Plaintiffs seek to recover damages from Payne, then and now the Commonwealth's Attorney for Nelson County, Virginia, on a theory that he conspired with the officers to provide false testimony at trial. Payne is entitled to absolute prosecutorial immunity. The law is clear that a state prosecuting attorney is absolutely immune from liability for damages under § 1983 for allegedly "conspiring" with police officers to present false testimony at a criminal trial and for the alleged withholding of exculpatory evidence (or, in the instant case, the alleged disclosure of "unsolicited" evidence). *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (holding that a state prosecuting attorney is absolutely immune from liability for damages for conspiring with police officers to present false testimony and for withholding exculpatory

---

[21] Plaintiffs are advised that the Fourth Circuit has made it "clear that there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). "[A] § 1983 claim grounded in the Fourth Amendment" does "not leave open, under the guise of malicious prosecution, constitutional claims barred by *res judicata*." *Id.* at 262-63. *See also Heck v. Humphrey*, 512 U.S. 477, 483-84 (1994) (finding legality of confinement claim analogous to false arrest and malicious prosecution torts, and incorporating into the federal claim the common law prerequisite of termination of the prior criminal proceeding in favor of the accused). Here, it appears that the crux of Plaintiffs Complaint is that the prior criminal proceeding did not terminate in Mrs. Smith's favor.

evidence prior to trial); *see also Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976).[22] Nothing in the allegations against Payne suggest that any of his alleged conduct was undertaken outside of his prosecutorial role.

### *Eleventh Amendment*

Additionally, Plaintiffs' claims against Payne in his official capacity are barred by the Eleventh Amendment. As a constitutional officer, a Commonwealth's Attorney is immune from liability. *See Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.*, 822 F.2d 456, 457-58 (4th Cir.1987); *Blankenship v. Warren Co.*, 918 F. Supp. 970, 974 n. 4 (W.D. Va. 1996) ("The Virginia Constitution creates five state officers which are charged with performing quintessential functions of state government: Commonwealth's Attorney, Treasurer, Commissioner of Revenue, Sheriff, and Clerk of the Court. . . . [T]hese officers are . . . state actors and . . . are entitled to immunity pursuant to the Eleventh Amendment"); *see also Plaster v. Brown*, 2005 WL 3021961 (W. D. Va. Nov. 8, 2005), adopted in pertinent part by *Plaster v. Brown*, 2006 WL 240866 (W.D. VA. Feb. 1, 2006).

### *Failure to State a Claim*

As explained elsewhere in this opinion, a plaintiff must affirmatively allege a defendant's personal involvement in order to state a claim under 42 U.S.C. § 1983. *See Garraghty*, 52 F.3d at 1280; *Wright*, 766 F.2d at 949; and *Barrow*, 498 F.2d 1397 (Table). In addition to the claims that Payne disclosed "unsolicited" evidence and failed to disclose allegedly exculpatory evidence, Plaintiffs seek to impose liability against Payne for the actions of the deputies during the search and arrest of Plaintiffs and for the alleged presentation of false testimony by the

---

[22] Virginia law also provides that state prosecutors are absolutely immune for their prosecutorial duties associated with the judicial phase of criminal process. *Andrew v. Ring*, 266 Va. 311, 320-21 (2003).

-29-

deputies.

There is no allegation that Payne knew about, gave advice regarding, or otherwise participated in Plaintiffs' arrest and the alleged search. The allegations do no suggest that Payne became involved until after the charges had been served. Consequently, Payne cannot be liable for the actions of the deputies during the arrest and the alleged search.

Regarding the allegation that Payne "conspired" with the deputies to present false testimony at the trial, there are simply no specific allegations to suggest his personal involvement. For example, there are no allegations that he knew ahead of time that the deputies intended to present false testimony, that he knew at the time the testimony was given that it was false, or, more importantly, that he took any affirmative action to encourage the presentation of false testimony. One is left to guess at how Payne may have "conspired" with the deputies to present false testimony, or what testimony may have been materially false as to the conduct with which Mrs. Smith was charged.[23] This is insufficient to state a conspiracy claim under 42 U.S.C. §1983. As previously explained, to assert conspiracy claims under § 1983, a plaintiff must "'plead specific facts in a nonconclusory fashion to survive a motion to dismiss.'" *Simmons*, 47 F.3d at 1377 (quoting *Gooden*, 954 F.2d at 969-970). At the December 19, 2008, hearing regarding the Motions to Dismiss, Plaintiffs' counsel implied that Payne and the Nelson Defendants communicated while the Nelson Defendants were still at Plaintiffs' property, stating: "The highest ranking members of the sheriff's department are at the scene, they're communicating. Who would they be communicating with?" Plaintiffs' counsel also stated that

---

[23] The transcript of the trial before the Nelson GDC indicates that, regarding the conduct with which Mrs. Smith was charged, the testimony of Deputies Bridgewater and McCarthy is consistent with the factual allegations in Plaintiffs' instant Complaint.

-30-

"[t]he allegation [against Payne] is that he was the one who instituted from the get-go, as soon as Donna Smith was dragged out of the ditch by the handcuffs, they were down there setting her up to get convicted." These statements perfectly illustrate the conclusory nature of Plaintiffs' allegations.

Furthermore, Plaintiffs must allege that Payne acted in concert with co-conspirators, that each co-conspirator shared the same conspiratorial objective to violate Plaintiffs' constitutional rights, and that the conspirators committed some "overt act . . . in furtherance of the conspiracy which resulted in . . . [a] deprivation of a constitutional right. . . ." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citation omitted). There are no such allegations here. The only allegations of personal involvement by Defendant Payne are those allegations concerning the disclosure of "unsolicited" evidence, and the alleged failure to disclose exculpatory evidence. There is no allegation why or how the disclosure of "unsolicited" evidence deprived Plaintiffs of any rights. Regarding the failure to disclose allegedly exculpatory evidence, Plaintiffs attached Exhibit D to the complaint (a letter that was mailed less than a week before the trial date) in which Plaintiffs' counsel requested the identity of certain deputies who were present on the property the night before the arrest. Construing the Complaint liberally, it appears that Plaintiffs must have intended to imply that this amounted to a request for exculpatory evidence under *Brady v. Maryland*, 37 U.S. 83 (1963). Plaintiffs argue that the individuals whose identity they sought may have been able to establish that, on the prior evening, the vehicle on the premises was determined not to have been registered to Reier, the fugitive. Therefore, Plaintiffs argue, it was relevant to the issue of whether the deputies on the following day had probable cause to be on the premises in the first place. However, as previously discussed, by definition this information does not constitute "exculpatory" evidence, which is defined as evidence that is

-31-

material to the issue of guilt or innocence. *See Bagley*, 473 U.S. at 676. The issue of probable cause and the issue of guilt or innocence are not the same. The failure to disclose information that is relevant only to the issue of probable cause to bring the charges is insufficient to establish a constitutional violation. *See Wilkins*, 2005 WL 1705211.

Plaintiffs' request, at best, constitutes an informal and unenforceable request for discovery, and in no way implicates the *Brady* disclosure requirements. This is supported by Plaintiffs' counsel's own conduct at the trial as set out in the Complaint. Obviously, by the time of trial, Plaintiffs' counsel knew that he had not received the names of the deputies that he had requested. Yet, in spite of this knowledge, he did not make a motion to compel, motion to suppress, or a motion for continuance, nor did he otherwise notify the trial judge. Under Rule 7C:5 of the Rules of the Supreme Court of Virginia, discovery in a case such as the Smith's is permitted only by Order of the court upon a motion filed by the accused at least 10 days before trial.[24] The instant Complaint, the record of the Nelson GDC case, and Payne's motion to dismiss indicate that Plaintiffs did not file a motion for discovery. Moreover, the informal request for discovery was sent less than a week before the trial. This is not a case regarding the failure to disclose evidence the existence of which the criminal defendant was unaware. Clearly, Plaintiffs knew that they had not received the names of the deputies that they had requested, and yet they did nothing to remedy the circumstances upon which they now seek to base a civil rights claim against Payne. The likely inference to be made from these facts is that they did nothing because the information they sought had no bearing on the question whether Mrs. Smith committed the conduct for which she was convicted of a misdemeanor charge of obstruction of

---

[24] Rule 7C:5 applies "to the prosecution for a misdemeanor which may be punished by confinement in jail," as in the Smith's case. Va. Sup. Ct. Rule 7C:5(a).

Case 3:08-cv-00036-NKM-BWC   Document 69   Filed 01/07/09   Page 32 of 33   Pageid#: 469

justice. Mrs. Smith did not even appeal her conviction. Payne's conduct, as alleged in the instant Complaint, simply does not establish a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" upon which relief can be granted under 42 U.S.C. §1983.

## IV. CONCLUSION

For the stated reasons, Defendants' Motions to Dismiss will be granted; accordingly, the Complaint will be dismissed and stricken from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record

Entered this _____ day of January, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

-33-